IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TERRI McCRACKEN, <br>     PLAINTIFF, <br><br> v. <br><br> CAPITAL MANAGEMENT HOLDINGS, LLC <br> DEBT MANAGEMENT PARTNERS, LLC, and <br> HARTFORD CASUALTY INSURANCE COMPANY, <br>     DEFENDANTS. | CASE NO.:  1:20-cv-1172 |

## COMPLAINT AND JURY DEMAND

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. This action arises out of the violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Texas Finance Code by Capital Management Holdings, LLC ("CMH") and Debt Management Partners, LLC ("DMP").

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5. Plaintiff resides in this District.

### PARTIES

6. Plaintiff, Terri McCracken ("Plaintiff"), is an adult individual residing in Travis County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

7. DMP is a Delaware company.

1

8. As will be described below, DMP purchased an Account allegedly owed by Plaintiff from a third-party for the purpose of collecting on that Account to make a profit.

9. The principal purpose of DMP is the collection of debts by using the mails and telephone and other means.

10. DMP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

11. DMP is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tx. Fin. Code § 392.001(7).

12. CMH is a New York company operating from Staten Island, New York, according to its website (www.cmhdebt.com) (last visited November 12, 2020).

13. CMH is not registered to do business in Texas, but can be served in New York via its registered agent, Corporation Service Company, at 80 State Street, Albany, NY 12207.

14. CMH advertises on its website (www.cmhdebt.com) (last visited November 12, 2020), that it "specializes in buying and selling debt."

15. As will be described below, CMH received placement of a past due account from DMP and attempted to collect that account from Plaintiff.

16. As will be described below, CMH directed communications to Plaintiff for the purpose of collecting the Account in question from him.

17. As can be seen on the website for the Better Business Bureau, other consumers have complained about the treatment they received during direct communications from CMH as

well (https://www.bbb.org/us/ny/staten-island/profile/collections-agencies/capital-management-holdings-0121-167012/complaints) (last visited November 12, 2020).

18. The principal purpose of CMH is the collection of debts using the mails and telephone and other means.

19. CMH regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

20. CMH is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tx. Fin. Code § 392.001(7).

21. Defendant Hartford Casualty Insurance Company ("Hartford") is the surety company for the bond DMP has on file with the Texas Secretary of State, bond number 20BSBGV8871. Hartford is liable for acts committed by DMP pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto, as well as any other applicable law.

22. Hartford is a foreign entity that can be served in the state of Texas via its registered agent, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas, 75201.

## FACTUAL ALLEGATIONS

23. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account"). Specifically, plaintiff believes the account

was a Money Key payday loan obtained to pay for various personal effects, but was not used for any business or commercial purposes.

24. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

25. The Account allegedly went into default with the original creditor, Money Key.

26. After the Account allegedly went into default, the Account was purchased by DMP for collection.

27. DMP placed the Account with, or otherwise transferred the Account to, CMH.

28. CMH then contacted Plaintiff directly to collect on the Account from Plaintiff.

29. DMP maintained a financial interest in the Account at all times relevant hereto, such that DMP would make more money if CMH collected on the Account than it would make if CMH did not collect on the Account.

30. Plaintiff admits the existence of the Account, but disputes the amount CMH and DMP attempted to collect from him.

31. Plaintiff requests that defendants cease all further communications regarding the Account.

32. When attempting to collect the Account, CMH used the unregistered fictitious business name of "Liberty."

33. In the one year prior to the filing of this Complaint, on approximately May 26, 2020, CMH left the following voicemail message for Plaintiff:

> Terri, my name is Tonya [inaudible last name]. I was contacting you in regards to your case that's being filed though Dallas County. Now, by law you have to make you aware that once case number 723984 is filed with the county, it becomes a matter of public record and there is an order for your location. Since I was unable to reach you by phone, Mr. McCracken, I have been instructed to contact your employer and speak with your

    supervisor because it does look like that'll be your likely place of location. Now, you do have a legal right to contact the proceedings office that is processing your case. However, you would have to speak with them before your case is filed. Once your case is discharged from their office, all your legal rights will be forfeited. Now, the number that is provided to that office is 855-453-4038. It also states here that you will need to speak with the legal department. Terri McCracken, you're being legally notified by telephone and relocated unless we hear otherwise.

34. In the one year prior to the filing of this complaint, on approximately June 23, 2020,

    CMH also left the following voicemail message for Plaintiff:

    Terri, this is Tanya Adams. I've been instructed to reach out to you in regards to your case that is now being resubmitted into Dallas County. Now, I have received that additional evidence from the office that was processing your case. I understand there'll be no way for you to state that you had no prior knowledge of this matter and you will be used against you there in Dallas County. Now, this may have been a mistake. You will need to make direct contact with that office. The number once again is 855-232-2795, referencing case number 723984. Now, if not, it will be assumed that you are forfeiting your legal rights to speak with them and you'll be located at your place of employment.

35. In the one year prior to the filing of this complaint, on approximately June 24, 2020,

    CMH left the following voicemail message for Plaintiff:

    Terri, this is Tanya Adams. I'm reaching out to you for a final time in regards to your case that has now been resubmitted into Dallas County. Now, I have received that additional evidence from the office that was processing your case. I understand there'll be no way for you to state that you had no prior knowledge of the matter and this will be used against you there in Dallas County. I understand that if this may have been a mistake, you'll need to make direct contact with that office. The number once again is 855-232-2795, referencing case number 723984. If not, it will be assumed that you're forfeiting your legal rights to the case and you'll be located at your place of residence.

36. In the one year prior to the filing of this Complaint, CMH also left at least one voicemail

    message for Plaintiff's ex-husband, which stated:

    Mark Henning this is Tonya Adams. I was contacting you in regards to a case that is in the process of being filed through Dallas County. The case is not being filed against you. It's actually being filed against Terri

5

> McCracken. Now, I have been instructed to make you aware that your name and address have them listed as the most likely location for her. Now, at this point, Ms. McCracken still has a legal right to contact the proceedings office that's filing her case to update her information. However, once the case is filed, that will no longer be an option. Now, the phone number that is provided to that legal department is 855-453-4038. Whenever she calls, she will also need to provide case number 723984. This is considered a legal notification by telephone and Ms. Terri McCracken will be located at your residence unless we are told otherwise.

37. In the one year prior to the filing of this complaint, CMH spoke with Plaintiff on the phone and stated that a lawsuit had been filed against Plaintiff in Dallas County, Texas and that they would call her employer.

38. CMH also spoke with Plaintiff's ex-husband's sister about the Account.

39. CMH also called Plaintiff's daughter and told her to inform Plaintiff that Plaintiff needed to call 855-453-4038 regarding case number 723984.

40. When Plaintiff called back to this number given to her daughter, she was told that CMH was a clearing house to file lawsuits and that she was being charged with fraud. Plaintiff was offered a deferred legal agreement to avoid the filing of the lawsuit and was also told that she was under a trace bond.

41. These communications were false and deceptive as Plaintiff had not been and was not going to be sued on the Account, there was no order of location being issued, there would be no one show up and find Plaintiff as threatened, there were no charges related to fraud about to be filed, there was no proposed deferred legal agreement and there was no trace bond.

42. By making all of the statements detailed above, CMH indirectly or directly told Plaintiff that a lawsuit had been filed or imminently would be filed against Plaintiff and that charges for fraud had been filed against her or imminently would be filed against her.

43. The communications described above would cause the least sophisticated consumer to believe that a lawsuit had been filed or imminently would be filed against him/her, that an attorney was working on recovery the Account for CMH, that a process server was about to serve him or her at work or at home, that a crime had been committed related to fraud and that involuntary enforcement proceedings against Plaintiff were imminent and that arrest was imminent.

44. All of the statements described above were made for the purpose of scaring Plaintiff into making a payment on the Account.

45. CMH's disclosure of the collection of the Account and conveying of the (false) threats sue and/or arrest Plaintiff to Plaintiff's relatives and ex-relatives was done without Plaintiff's consent and amounted to an unlawful third-party disclosure. These disclosures were deeply humiliating and embarrassing to Plaintiff.

46. In order to avoid the impending perils of having CMH call her place of employment and in order to avoid the continued embarrassment of having family members and ex-family members contacted by CMH, Plaintiff made payments on the Account to CMH totaling $250.

47. As of the filing of the original Complaint in this matter, no lawsuit has been filed against Plaintiff on the Account. At the time CMH made the statements detailed above, neither CMH nor DMP had any intent to sue Plaintiff on the Account.

48. In every communication with Plaintiff, CMH failed to inform Plaintiff that CMH was a debt collector, that CMH was attempting to collect a debt and/or that any information obtained would be used for the purpose of debt collection.

49. In communications with Plaintiff, CMH failed to provide meaningful disclosure of its identity.

50. CMH never provided Plaintiff with notice of Plaintiff's rights to dispute the Accout or request validity of the Account as required by 15 U.S.C. § 1692g.

51. CMH's collection practices caused Plaintiff to suffer fear, anxiety, stress, sleeplessness, mental anguish, embarrassment, mild depression and/or distraction from normal life.

52. CMH 's purpose for calling Plaintiff was to attempt to collect the Account.

53. The telephone calls described above each constituted a "communication" as defined by FDCPA § 1692a(2).

54. On information and belief, DMP directly or indirectly, exerted influence over CMH and caused CMH to act in the manner that they did with respect to Plaintiff.

55. By virtue of having been sued by other Texas consumers for the bad acts of CMH, DMP knew that CMH repeatedly or continuously engaged in collection practices as described above.

56. During all times pertinent hereto, DMP (a) ratified the unlawful debt collection practices and procedures used by CMH and its employees and agents in connection with their common efforts to collect consumer debts, and/or (b) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by CMH and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

57. The only reason that CMH and/or its representative(s), employee(s) and/or agent(s) made telephone call(s) to Plaintiff was to attempt to collect the Account.

58. The only reason that CMH and/or its representative(s), employee(s) and/or agent(s) had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

59. CMH conducted all of its collection attempts without a surety bond on file with the Texas Secretary of State.

60. All of the conduct by CMH and/or DMP and/or their employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

61. By virtue of having been sued by other Texas consumers for the bad acts of CMH, DMP had actual knowledge that CMH repeatedly or continuously engaged in acts or practices prohibited by Chapter 392 of the Texas Finance Code, specifically, but not limited to, collecting in Texas without a surety bond on file with the Texas Secretary of State.

62. As a consequence of Defendants' collection activities and communication(s), Plaintiff seeks damages and attorneys fees and costs pursuant to 15 U.S.C. § 1692k and damages, an injunction, attorneys fees and costs pursuant to Tex. Fin. Code § 392.403.

## RESPONDEAT SUPERIOR

63. The representative(s) and/or collector(s) at CMH were employee(s) and/or agents of CMH at all times mentioned herein.

64. The representative(s) and/or collector(s) at CMH were acting within the course of their employment at all times mentioned herein.

65. The representative(s) and/or collector(s) at CMH were under the direct supervision and control of CMH at all times mentioned herein.

66. The actions of the representative(s) and/or collector(s) at CMH are imputed to their employer, CMH.

67. DMP was aware of and profited from the collection methods and practices used by CMH's employees.

68. The actions and inactions of CMH, and its employee(s) and/or agents, are imputed to DMP.

### COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq.<br>BY CAPITAL MANAGEMENT HOLDINGS, LLC

69. The previous paragraphs are incorporated into this Count as if set forth in full.

70. The act(s) and omission(s) of CMH and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692b(1)&(2) and 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)& (3)&(4)&(5)&(7)&(8)&(10)&(11)&(13)&(14)and §1692g(a).

71. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from CMH.

### COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE<br>BY CAPITAL MANAGEMENT HOLDINGS, LLC

72. The previous paragraphs are incorporated into this Count as if set forth in full.

73. The act(s) and omission(s) of CMH and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code §392.101 and §392.301(a)(2)&(3)&(5)&(6)&(7)&(8) and §392.302(1) and §392.304(a)(1)&(4)&(5)&(8)&(12)&(13)&(14)&(16)&(17)&(19).

74. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against CMH enjoining it from future violations of the Texas Finance Code as described herein.

75. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from CMH.

76. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from CMH.

77. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

### COUNT III:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY CAPITAL MANAGEMENT HOLDINGS, LLC

78. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, CMH is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).  CMH intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

79. Plaintiff suffered actual damages from CMH as a result of the intrusion on Plaintiff's privacy.

### COUNT IV:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY DEBT MANAGEMENT PARTNERS, LLC

80. The previous paragraphs are incorporated into this Count as if set forth in full.

81. By having a financial interest in CMH's conduct toward Plaintiff, DMP is liable for the act(s) and omission(s) of CMH and their representative(s), employee(s) and/or agent(s) for violations 15 U.S.C. § 1692b(1)&(2) and 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)& (3)&(4)&(5)&(7)&(8)&(10)&(11)&(13)&(14)and §1692g(a).

82. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from DMP.

### COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE BY DEBT MANAGEMENT PARTNERS, LLC

83. The previous paragraphs are incorporated into this Count as if set forth in full.

84. By having a financial interest in CMH's conduct toward Plaintiff, DMP is liable for the act(s) and omission(s) of CMH and their representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code §392.101 and §392.301(a)(2)&(3)&(5)&(6)&(7)&(8) and §392.302(1) and §392.304(a)(1)&(4)&(5)&(8)&(12)&(13)&(14)&(16)&(17)&(19).

85. DMP is additionally liable to Plaintiff under Tex. Fin. Code §392.306.

86. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against DMP enjoining it from future violations of the Texas Finance Code as described herein.

87. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from DMP.

88. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from DMP.

89. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

### COUNT VI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY DEBT MANAGEMENT PARTNERS, LLC

90. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, DMP is liable to Plaintiff for colluding with CMH to invade Plaintiff's privacy (intrusion on seclusion).  DMP intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

91. Plaintiff suffered actual damages from DMP as a result of the intrusion on Plaintiff's privacy.

## COUNT VII:  IMPUTED LIABILITY OF HARTFORD CASUALTY INSURANCE COMPANY FOR LIABILITY OF DEBT MANAGEMENT PARTNERS, LLC

92. The previous paragraphs are incorporated into this Count as if set forth in full.

93. The act(s) and omission(s) of DMP and its representative(s), employee(s) and/or agent(s) in violation of Tex. Fin. Code §392.101 and §392.301(a)(2)&(3)&(5)&(6)&(7)&(8) and §392.302(1) and §392.304(a)(1)&(4)&(5)&(8)&(12)&(13)&(14)&(16)&(17)&(19) and §392.306 are imputed to Hartford pursuant to Tex. Fin. Code § 392.102.

94. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Hartford.

## EXEMPLARY DAMAGES

95. Exemplary damages should be awarded against CMH and/or DMP because the harm with respect to which Plaintiff seeks recovery of exemplary damages resulted from malice (which means that there was a specific intent by CMH and/or DMP to cause substantial injury or harm to Plaintiff) and/or gross negligence (which means that CMH's and/or DMP's actions and/or omissions (i) when viewed objectively from CMH's and/or DMP's standpoint at the time of the acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that CMH and/or DMP had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others).

## JURY TRIAL DEMAND

96. Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

97. Judgment in favor of Plaintiff and against Capital Management Holdings, LLC as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

    e. Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

    f. An injunction permanently enjoining CMH following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

    g. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

    h. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    i. Such other and further relief as the Court deems just and proper.

98. Judgment in favor of Plaintiff and against Debt Management Partners, LLC as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

    e.   Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

    f.   An injunction permanently enjoining DMP following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

    g.   Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

    h.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    i.   Such other and further relief as the Court deems just and proper.

99.   Judgment in favor of Plaintiff and against Hartford Casualty Insurance Company as follows:

    a.   Statutory damages in the amount of not less than $100 for each violation of Tex. Fin. Code chapter 392, pursuant to Tex. Fin. Code § 392.403;

    b.   Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    c.   Such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE WOOD FIRM, PLLC

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
11610 Pleasant Ridge Rd.
Suite 103 – Box 208
Little Rock, AR  72223
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff